1  Tatyana Evgenievna Drevaleva

2  3015 Clement St., Apt. 204,

3  San Francisco, CA, 94121

4  415-954-2116, tdrevaleva@gmail.com

5  Plaintiff in Pro Per

6

7  THE UNITED STATES DISTRICT COURT

8  FOR NORTHERN CALIFORNIA

9

10

11  | | Case No. 3:18-cv-03748-JCS |

12  Tatyana E. Drevaleva

13  *Plaintiff*,   Notice of Motion; Second Motion to

14  vs.   Strike Defendants' June 04, 2021 Answer

15  1) The U.S. Department of Veterans   to My Original June 25, 2018 Complaint
   Affairs

16   in Its Entirety or Partially,

17  2) Mr. Denis Richard McDonough in his
   capacity as a Secretary of the U.S.   F.R.C.P. Rule 12(f);
   Department of Veterans Affairs

18  810 Vermont Avenue, NW,   Memorandum of Points and Authorities;

19  Washington, D.C. 20420   Declaration; Proposed Order.

20  *Defendant*

21  Facility:   Date: July 30, 2021

22  New Mexico VA Healthcare System   Time: 09:30 AM
   1501 San Pedro Drive, S.E.

23  Albuquerque, NM, 87108   Location: Courtroom F – 15th Floor

24   450 Golden Gate Avenue,

25   San Francisco, CA 94102

26   Judge: The Hon. Chief Magistrate

27   Judge Joseph C. Spero

28

Second Motion to Strike Defendants' June 04, 2021 Answer; No. 3:18-cv-03748-JCS

TO THE HONORABLE COURT, ALL PARTIES, AND COUNSEL ON RECORD.

NOTICE IS HEREBY GIVEN that on 07/30/2021 at 09:30 AM or as soon thereafter as the matter may be heard in Courtroom F at the 15th Floor of the District Court for Northern California located at 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiff Pro Se Tatyana Drevaleva will move the Court the second time for an Order that strikes Defendants' June 04, 2021 Answer to my Original June 25, 2018 Complaint.in its entirety. I am making this Motion pursuant to the F.R.C.P, Rule 12(f.)

As an alternative, I am asking the District Court to strike parts of Defendants' June 04, 2021 Answer pursuant to the F.R.C.P, Rule 12(f.)

Said the Second Motion to Strike shall be based on this Notice, the attached Second Motion to Strike Defendants' June 04, 2021 Answer to my Original June 25, 2018 Complaint in its entirety pursuant to the F.R.C.P, Rule 12(f), or, as an alternative, to strike parts of Defendants' June 04, 2021 Answer, the attached Memorandum of Points and Authorities, the attached Declaration, the pleadings and papers on file, and on such additional maters as may be presented to the Court prior to or at the hearing.


Dated: June 19, 2021          Signed: Tatyana Drevaleva

Second Motion to Strike Defendants' June 04, 2021 Answer; No. 3:18-cv-03748-JCS

# TABLE OF CONTENTS

I.   **Objection No. 16**. 5:14-6:4……………………………………………………4

II.  **Objection No. 17**. 6:5-10………………………………………………….....9

     **Material fact No. 1**……………………………………………………17

     **Material fact No. 2**……………………………………………………17

     **Material fact No. 3**……………………………………………………18

     **Material fact No. 4**……………………………………………………18

     **Material fact No. 5**……………………………………………………18

     **Material fact No. 6**……………………………………………………20

     **Material fact No. 7**……………………………………………………20

     **Material fact No. 8**……………………………………………………20

     5 CFR § 630.1208 - Medical certification…………………………………...20

     I am respectfully asking the Court to judicially notice………………………24

III. Conclusion………………………………………………………………….........27

Second Motion to Strike Defendants' June 04, 2021 Answer; No. 3:18-cv-03748-JCS

1

2

## MEMORANDUM OF POINTS AND AUTHORITIES

3

**Objection No. 16**. 5:14-6:4. Read my June 25, 2018 Complaint, "On May 17, 2017, I worked a night shift together with my co-worker Mrs. Nadya Das who is a Russian speaking lady and a Monitor Technician at 5D. I said to Nadya about my plan to go to Russia to perform an IVF procedure. On that night, Ms. Dunkelberger was absent. I was told that she would be absent for two weeks, and she would return back to work only at the end of May 2017. I spoke to Assistant Manager Mrs. Phil Johnson on that night. I said to him that I had spoken to Ms. Dunkelberger about my plan to go to Russia for an IVF procedure, and I told Mr. Johnson exactly the same things that I had told Ms. Dunkelberger (that I was 50 yo, that I didn't have children, that I performed approximately 8 IUI procedures with donor's sperm, that I spent 2.5 years in Russia for my medical examination and treatment, that I underwent multiple gynecological surgeries, that I performed 3 attempts of IVF, that I had an embryo that is frozen in Russia, that I had a right for a free of charge IVF attempt in Russia, that I had only three pills of Jeanine left, that I couldn't refill these pills in the United States, I needed to go to Russia to perform a free IVF attempt, I couldn't pay $15 thousand U.S. dollars for one IVF attempt in tne United States, I requested documentation from my Russian OB/GYN that I am in Registry of the Ministry of Health of the Novosibirsk Region of Russia for a free IVF attempt, that I didn't have time to get this document translated in the United States but I will translate it in Russia and email it to Ms. Dunkelberger and Mr. Johnson. Also, I gave my verbal consent that I allow Mrs. Nadya Das to preliminary translate this document before I have a chance to officially translate it in Russia."

Read Zack's June 04, 2021 Answer, page 4, lines 16-22, "Defendants admit that Plaintiff worked **from 11:30 p.m. on May 17, 2017, to 8 a.m.** on May 18, 2017. Defendants admit that Plaintiff worked with Ms. Das that night and told Ms. Das about her plans to go to Russia the next day for a medical reason. Defendants admit that Ms. Dunkelberger was absent that night. Defendants admit that Plaintiff spoke with Mr. Johnson that night about her plans to return to Russia the next day for medication and in vitro fertilization. Defendants are without sufficient

Second Motion to Strike Defendants' June 04, 2021 Answer; No. 3:18-cv-03748-JCS

1    knowledge to admit or deny the remaining factual allegations in this paragraph, including the

2    details of the conversation with Mr. Johnson and, on that basis, deny those allegations."

3    <u>My objection</u>.

4    1) I am respectfully asking the Court to strike Defendants' libelous assertion that I

5    worked **for eight hour shifts** and that, see page 4, lines 16-17, I worked "**from 11:30**

6    **p.m. on May 17, 2017, to 8 a.m. on May 18, 2017**." In fact, I worked **for twelve**

7    **hour shifts**, and I worked from May 17, 2017 from approximately 19:00 PM to May

8    18, 2017 to approximately 07.30 AM. Please, notice that the New Mexico VA Health

9    Care System never paid overtime compensation for working in excess of eight hours

10    per day. Therefore, I am respectfully asking the court to strike Defendants' frivolous

11    assertion that I worked "from 11:30 p.m. on May 17, 2017, to 8 a.m. on May 18,

12    2017."

13    2) I am respectfully asking the Court to strike Defendants' sentence, page 4, lines 20-

14    22, "Defendants are without sufficient knowledge to admit or deny the remaining

15    factual allegations in this paragraph, including the details of the conversation with

16    Mr. Johnson and, on that basis, deny those allegations" for the following reasons:

17    a) It is undisputed that Ms. Das was my Russian speaking co-worker

18    b) It is undisputed that Ms. Das was appointed as a Monitor Technician at 5D, or, to

19    be precise, as a Medical Instrument Technician, see (**ER 03748 Vol. 1, page 275**)

**From:** Dunkelberger, Carla
**Sent:** Monday, November 20, 2017 10:43 AM
**To:** Shafer, Amy V. <Amy.Shafer@va.gov>
**Cc:** Rincon, Donald M. <Donald.Rincon@va.gov>; Dunkelberger, Carla <Carla.Dunkelberger@va.gov>; Salazar-Ruiz, Andrew V. <Andrew.Salazar-Ruiz@va.gov>; Bonin, Allean R. <AlleanRanetta.Bonin@va.gov>
**Subject:** RE: Request for documents

1. Organizational chart – see attached
2. Breakdown of organizational unit for position in question (Medical Instrument Technician). EEO categories unknown.
   a. Tatyana Drevaleva, Medical Instrument Technician, GS-649-07, full time.
   b. Nadzeya Das, Medical Instrument Technician. GS-0649-06, full time.
   c. David Williams, Medical Instrument Technician. GS-0649-06, full time.
   d. David Trujillo, Medical Instrument Technician, GS-0649-05, full time
   e. Vacant Position, Medical Instrument Technician, GS-0649, full time.

Second Motion to Strike Defendants' June 04, 2021 Answer; No. 3:18-cv-03748-JCS

3) I am respectfully asking the Court to strike Zack's statement, page 4, lines 17-18, "Defendants admit that Plaintiff worked with Ms. Das that night and told Ms. Das about her plans to go to Russia the next day **for a medical reason**" because I declare under the penalty of perjury and under the Federal laws that on May 17, 2017 I said to Ms. Das about my plans to go to Russia **to refill a prescription of my hormonal pills and to perform an In-Vitro Fertilization procedure**.

4) I declare under the penalty of perjury and under the Federal laws that on May 17, 2017 Mr. Phil Johnson told me that Ms. Dunkelberger was out of her office, and that she would be back to her office **only in two weeks** that was approximately the end of May 2017.

5) I am respectfully asking the Court to strike Defendants' sentence, page 4, lines 19-22, "Defendants admit that Plaintiff spoke with Mr. Johnson that night **about her plans to return to Russia the next day for medication and in vitro fertilization**. Defendants **are without sufficient knowledge** to admit or deny the remaining factual allegations in this paragraph, including the details of the conversation with Mr. Johnson and, on that basis, deny those allegations" for the following reasons:

    a) Because I can demonstrate by the preponderance of the evidence that I said to Mr. Johnson about all of the following, see Mr. Johnson's EEO Interrogatory (**ER 03748 Vol. 1, 218-219**):

        (i)     That I had "**one pill left**"[1]

        (ii)    That I was flying to Russia next day

        (iii)   That I was flying to Russia to get In-Vitro Fertilization done

        (iv)   That I was 50 yo

        (v)    That I always wanted to have children

        (vi)   That "it could be [my] last chance"

        (vii)  That on May 17, 2017 Mr. Johnson gave me an OPM 71 form

---

[1] Mr. Johnson erred. On May 17, 2017, I had three pills left.

Second Motion to Strike Defendants' June 04, 2021 Answer; No. 3:18-cv-03748-JCS

(viii)   That on May 17, 2017 Mr. Johnson asked me to fill out this form

(ix)   That on May 17, 2017 Mr. Johnson asked me to provide my medical documentation

(x)   That on May 17, 2017 Mr. Johnson **didn't** say that the medical documentation should be on English language

(xi)   That on May 17, 2017 Mr. Johnson **didn't** say that the medical documentation on English language should be submitted **prior to approval** of the leave of absence

(xii)   That on May 17, 2017 Mr. Johnson said that he could not approve my request for a Leave Without Pay

(xiii)   That on May 17, 2017 Mr. Johnson said that he would turn the [medical] documentation

(xiv)   That on May 17, 2017 Mr. Johnson said that, if this was that important, I should go.

Read Mr. Johnson's EEO Interrogatory (**ER 03748 Vol. 1, 218-219**), "The complaintant came into the office, after business hours, on May 17, 2017 stating **s/he had one pill left** and **was flying to Russia the next day** to have Invitro Fertilization done. The complaintant also stated his/her age to be 50 and that s/he had always wanted to have children and "this may be my last chance." I handed the complaintant the OPM71 paper work and stated that this must be filled out and supporting documentation in English from the doctor must also be supplied. At this time I stated to the complaintant that I could not approve Leave Without Pay but I would turn in the documentation **and if this was that important then s/he should go**."

Also, I declare under the penalty of perjury and under the Federal laws that on May 17, 2017, I said to Mr. Johnson:

1)   that I had spoken to Ms. Dunkelberger about my plan to go to Russia for an IVF procedure

2)   that I told Mr. Johnson exactly the same things that I had told Ms. Dunkelberger:

(i)  that I was 50 yo

Second Motion to Strike Defendants' June 04, 2021 Answer; No. 3:18-cv-03748-JCS

1     (ii) that I didn't have children

2     (iii)that I performed approximately 8 IUI procedures with donor's sperm

3     (iv)that I spent 2.5 years in Russia for my medical examination and treatment

4     (v) that I underwent multiple gynecological surgeries

5     (vi)that I performed 3 attempts of IVF

6     (vii)    that I had an embryo that is frozen in Russia

7     (viii)    that I had a right for a free of charge IVF attempt in Russia

8     (ix)that I had only three pills of Jeanine left

9     (x) that I couldn't refill these pills in the United States

10    (xi)that I needed to go to Russia to perform a free IVF attempt

11    (xii)    that I couldn't pay $15 thousand U.S. dollars for one IVF attempt in the
12             United States

13    (xiii)    that I requested documentation from my Russian OB/GYN

14    (xiv)    that I am in Registry of the Ministry of Health of the Novosibirsk Region of
15             Russia for a free IVF attempt

16    3) that I didn't have time to get this document translated in the United States but I will

17    translate it in Russia and email it to Ms. Dunkelberger and Mr. Johnson

18    4) Also, I gave my verbal consent that I allow Mrs. Nadya Das to preliminary translate

19    this document before I have a chance to officially translate it in Russia.

20    Read (**ER 03748 Vol. 1, 218-219**),

21 and the circumstances surrounding this event? *The complainant came into the
   office, after business hours, on May 17, 2017 stating s/he had one pill left and was*
22 *flying to Russia the next day to have Invitro Fertilization done.The complainant*
   *also stated his/her age to be 50 and that s/he had always wanted to have children*
23 *and "this may be my last chance". I handed the complainant the OPM71 paper*

24 *work and stated that this must be filled out and supporting documentation in*
   *English from the doctor must also be supplied. At this time I  stated to the*
25 *complainant that I could not approve Leave Without Pay but I would turn in the*
   *documentation and if this was that important then s/he should go.*
26

27

28

Second Motion to Strike Defendants' June 04, 2021 Answer; No. 3:18-cv-03748-JCS

**Objection No. 17**. 6:5-10. Read my June 25, 2018 Complaint, "Because on that night Ms. Dunkelberger was absent, I asked Mr. Johnson's permission to go to Russia for the mentioned above purposes. The exact words of Mr. Johnson were, "If you need to go – go!" Therefore, he verbally allowed me to go to Russia. He gave me a form to fill out and request a LWOP. I filled this form out, and I requested a LWOP from May 18, 2017 to July 07, 2017. Unfortunately, I don't have a copy of that form. I put the completed form under the door of Mr. Johnson's office."

Read Zack's Answer, from page 4, line 23 to page 5, line 4, "Defendants admit that Plaintiff asked Mr. Johnson's permission to go to Russia. Defendants deny that Plaintiff was given verbal permission to go to Russia or take two or more weeks of leave and that any leave was approved. Defendants admit that Plaintiff completed a form requesting leave without pay from May 18, 2017, to July 7, 2017, and slid the form under Mr. Johnson's door. Defendants aver that Plaintiff submitted no medical documentation with the form and that the request was not approved prior to Plaintiff's departure for Russia. Defendants respectfully refer the Court to the document for a full and accurate statement of its contents. To the extent that Plaintiff's characterization of the content of this document is inconsistent with the text of the document, Defendants deny the allegations. Defendants are without sufficient knowledge to admit or deny the remaining factual allegations in this paragraph and, on that basis, deny those allegations."

My objection.

I am respectfully asking the Court to strike Zack's statement, page 4, line 23, "Defendants admit that Plaintiff asked Mr. Johnson's permission to go to Russia" because this statement is incomplete. The correct statement is, see my Complaint, page 6, lines 5-6, "**Because on that night Ms. Dunkelberger was absent**, I asked Mr. Johnson's permission to go to Russia **for the mentioned above purposes**." Therefore, Zack failed to specify that:

1) On May 17, 2017 I asked Mr. Johnson to allow me to go to Russia because on that night Ms. Dunkelberger was out of her office

2) On May 17, 2017 I asked Mr. Johnson to allow me to go to Russia for the following purposes:

Second Motion to Strike Defendants' June 04, 2021 Answer; No. 3:18-cv-03748-JCS

a) To refill a prescription of my hormonal pills because I had only three pills left, and I couldn't obtain the pills in the United States

b) To perform an In-Vitro Fertilization procedure.

I am respectfully asking the Court to strike Zack's sentence, page 4, line 24-25, "Defendants deny that Plaintiff was given verbal permission to go to Russia or **take two** or more weeks of leave and that any leave was approved" for the following reasons:

1) Because I **didn't** say to Mr. Johnson that I would take **two** weeks off. I specifically said to Mr. Johnson that I would take six weeks.

2) On May 17, 2017, Mr. Johnson verbally approved my request for a leave. Read Mr. Johnson's EEO Interrogatory (**ER 03748 Vol. 1, 219**), "**and if this was that important then s/he should go**."

*English from the doctor must also be supplied. At this time I stated to the complaintant that I could not approve Leave Without Pay but I would turn in the documentation and if this was that important then s/he should go.*

I am respectfully asking the Court to strike Zack's phrase, page 4, lines 25-26, "Defendants admit that Plaintiff completed a form requesting leave without pay from May 18, 2017, to July 7, 2017, and slid the form under **Mr. Johnson's** door" for the following reasons:

1) Because Zack failed to specify that it was an OPM 71 form

2) Because Zack failed to specify that:

   a) on May 17, 2017 **Mr. Johnson** gave me this form OPM 71, and

   b) **he asked me** to fill it out, and

   c) **he specifically asked me to request a Leave Without Pay**, and

   d) **he never asked me to request any form of a paid leave of absence**

3) Because it the door was not "**Mr. Johnson's**" door. It was the door of the Manager's office (Manager Ms. Dunkelberger and Assistant Manager Mr. Johnson.)

Second Motion to Strike Defendants' June 04, 2021 Answer; No. 3:18-cv-03748-JCS

1    I am respectfully asking the Court to strike Zack's sentence, page 4, line 27, "Defendants
2  aver that Plaintiff submitted no medical documentation with the form…."

3    I admit that I didn't submit any medical documentation with the form. Actually, **I was
4  not required to submit any medical documentation** in support to my Request for a Leave
5  Without Pay. See *JOSEPH L. BURNS v. KIRSTJEN NIELSEN, Secretary, U.S. Department of*
6  *Homeland Security*, EP-17-CV-00264-DCG, UNITED STATES DISTRICT COURT
7  WESTERN DISTRICT OF TEXAS EL PASO DIVISION (January 28, 2020) (Doc. No. 310,
8  February 14, 2021) (Exhibit 327),

9         "**A. Improper medical Inquiry Claim**

10    The RA incorporates by reference many of the prohibitions on employment
11 discrimination of Title I of the Americans with Disabilities Act ("ADA"), including [42 U.S.C.]
12 § **12112(d)(4)(A)**'s **medical inquiry prohibition**. *Taylor v. City of Shreveport*, 798 F.3d 276,283
13 (5th Cir. 2015). Section 12112(d)(4)(A) provides:

14         A covered entity **shall not** require a medical examination and **shall not** make
15         inquiries of an employee as to whether such employee is an individual with a
               disability or as to the nature or severity of the disability, unless such examination
16         or inquiry is shown to be job-related and consistent with business necessity.

17

18    A plaintiff, however, need not establish that he has a disability to prevail on a claim for
19 an improper medical inquiry under this ADA provision. *Taylor*, 798 F.3d at 284; see also
20 *Williams v. FedEx Corp. Servs,* 849 F.3d 889, 901 (10th Cir. 2017) ("The provision applies to **all**
21 employees, and **a plaintiff need not prove that he is disabled**.").

22    Before addressing the merits of Burns's medical inquiry claim, the Court addresses two
23 procedural matters. The magistrate judge found that (a) Burns's Complaint alleged a claim for
24 improper medical inquiry, id at 25, and (b) Burns exhausted his administrative remedies on his
25 medical inquiry claim, R&R at 24. The Secretary objects to these findings. Def. 's Objs. to R&R
26 at 16. Below, the Court addresses each in turn."

27    "… an improper medical examination or inquiry "may constitute a form of employment
28 discrimination under the ADA." *Taylor*, 798 F.3d at 282 (citing§ 12112(d)(1)); see also

Second Motion to Strike Defendants' June 04, 2021 Answer; No. 3:18-cv-03748-JCS

1   ***Fredenburg v. Contra Costa Cty. Dept. of Health Servs.*, 172 F .3d 1176, 1181 (9th Cir. 1999)**

2   ("Subsection (d)(1) provides a general prohibition against using medical examinations to

3   discriminate; subsections (d)(2) through (d)(4) provide more detailed guidelines as to what is and

4   is not allowed."); *Harrison v. Benchmark Elecs. Huntsville, Inc.*, 593 F.3d 1206, 1213 (11th Cir.

5   2010) ("[O]ne way a disabled plaintiff could meet his prima facie case of discrimination [under §

6   12112(d)(l)] would be by showing that <u>his employer discriminated against him by</u> ... **making**

7   **a[n] ... improper medical inquiry in violation of subsection (d)**[,]" which includes, among

8   others, § **12112(d)(4)(A)**.)

9

10   Therefore, an employer may be liable for making medical inquiries directed at its

11   employees under either§ 12112(d)(4)(A) or§ 12112(d)(1). Whereas § 12112(d)(4)(A) does not

12   require plaintiff to assert that he "has a disability to contest an allegedly improper medical

13   inquiry or medical examination," *Taylor*, 198 F.3d at 284, § 12112(d)(1) does, *Harrison*, 593

14   F.3d at 1213 ("[B]ecause § 12112(d)(1) expressly incorporates§ 12112(a)'s prohibition of

15   discrimination against 'qualified individuals [on the basis of] disabilit[y],' ... to maintain an action

16   for discrimination itself, a plaintiff must be disabled under the ADA.")."

17

18   I am repeating that, despite I didn't submit my medical documentation with my form

19   OPM 71 on May 17, 2017, I notified Mr. Johnson that:

20       1)  I would receive this medical documentation within the next few hours,

21       2)  that this documentation would be on Russian language,

22       3)  that I would not be able to translate this documentation into English **using a certified**

23          **translator** prior to my departure to Russia on May 18, 2017

24       4)  that Ms. Dunkelberger specifically told me that I didn't have a right to translate my

25          medical documentation into English myself

26       5)  that Ms. Dunkelberger specifically told me that only a certified translator had a right

27          to translate my medical documentation from Russian into English

28       6)  that I had three pills left, and that I needed to take the pills during my trip to Russia

7) that I would leave to Russia on May 18, 2017 because I have three pills left and because I can't afford to miss a pill, and because I can't obtain these pills in the United States

8) that I would email my medical documentation on Russian language as soon as I receive it within the next few hours

9) that, as soon as I arrive at Russia, I would find a certified translator, I would translate my medical documentation into English, and I would email my medical documentation on English language to both Ms. Dunkelberger and Mr. Johnson

10) that, until I find a certified translator in Russia, and until I email my medical documentation on English language to both Ms. Dunkelberger and Mr. Johnson, I authorized my Russian speaking co-worker Ms. Nadya Das to translate this medical documentation for both Ms. Dunkelberger and Mr. Johnson.

I am respectfully asking the Court to strike Zack's sentence, page 4, lines 27-28, "Defendants aver that … the request was not approved prior to Plaintiff's departure for Russia."

I am repeating Mr. Johnson's EEO Interrogatory (**ER 03748 Vol. 1, 219**), "**and if this was that important then s/he should go**."

*English from the doctor must also be supplied. At this time I  stated to the complainant that I could not approve Leave Without Pay but I would turn in the documentation and if this was that important then s/he should go.*

Also, see the November 18, 2020 Memorandum of the 9th Circuit in Appeal No. 19-16395, page 4, "Drevaleva alleged that she was denied leave for her alleged disability and terminated even though **she made a proper request that was approved by her supervisor**." Please, notice that Defendants didn't file any Petition for Rehearing and didn't attempt to reverse the 9th Circuit's ruling that I had left my job with a permission of my Supervisor.

Therefore, because Defendants didn't attempt to reverse the ruling of the 9th Circuit, Defendants are not eligible to re-assert that I had left my job without permission.

I am respectfully asking the Court to take a Judicial Notice of my May 18, 2017 Request for Leave Without Pay (**ER 03748 Vol. 1, page 287**.)

Second Motion to Strike Defendants' June 04, 2021 Answer; No. 3:18-cv-03748-JCS

QD 6/28/17

## Reque. for Leave or Approved Absei.

| 1. Name (Last, first, middle) | 2. Employee or Social Security Number (Enter only the last 4 digits of the Social Security Number (SSN)) |
|---|---|
| Drevaleva Tatyana E | |

| 3. Organization | albuquerque VAMC, 5D |
|---|---|

| 4. Type of Leave/Absence (Check appropriate box(es) below) | Date | | Time | | Total Hours | 5. Family and Medical Leave |
|---|---|---|---|---|---|---|
| | From | To | From | To | | |
| ☐ Accrued Annual Leave | | | | | | If annual leave, sick leave, or leave without pay will be used under the Family and Medical Leave Act of 1993, please provide the following information: |
| ☐ Restored Annual Leave | | | | | | |
| ☐ Advanced Annual Leave | | | | | | |
| ☐ Accrued Sick Leave | | | | | | ☐ I hereby invoke my entitlement to Family and Medical Leave for: |
| ☐ Advanced Sick Leave | | | | | | |
| Purpose: ☐ Illness/injury/incapacitation of requesting employee | | | | | | ☐ Birth/Adoption/Foster Care |
| ☐ Medical/dental/optical examination of requesting employee | | | | | | ☐ Serious health condition of spouse, son, daughter, or parent |
| ☐ Care of family member, including medical/dental/optical examination of family member, or bereavement | | | | | | ☐ Serious health condition of self |
| ☐ Care of family member with a serious health condition | | | | | | Contact your supervisor and/or your personnel office to obtain additional information about your entitlements and responsibilities under the Family and Medical Leave Act. Medical certification of a serious health condition may be required by your agency. |
| ☐ Other | | | | | | |
| ☐ Compensatory Time Off | | | | | | |
| ☐ Other Paid Absence (Specify in Remarks) | | | | | | |
| ☒ Leave Without Pay | 05.18.17 | 07.07.17 | | | | |

6. Remarks: To solve my health issues in Russia

7. Certification: I hereby request leave/approved absence from duty as indicated above and certify that such leave/absence is requested for the purpose(s) indicated. I understand that I must comply with my employing agency's procedures for requesting leave/approved absence (and provide additional documentation, including medical certification, if required) and that falsification on this form may be grounds for disciplinary action, including removal.

| 7a. Employee Signature | 7b. Date |
|---|---|
| Tatyana Drevaleva | 05.17.2017 |

| 8a. Official Action on Request: ☐ Approved ☒ Disapproved | (If disapproved, give reason. If annual leave, initiate action to reschedule.) |
|---|---|

8b. Reason for Disapproval:

| 8c. Supervisor Signature | 8d. Date |
|---|---|
| Prince DNP, RN | 5-19-2017 |

PRIVACY ACT STATEMENT
Section 6311 of Title 5, United States Code, authorizes collection of this information. The primary use of this information is by management and your payroll office to approve and record your use of leave. Additional disclosures of the information may be: to the Department of Labor when processing a claim for compensation regarding a job connected injury or illness; to a State unemployment compensation office regarding a claim; to Federal Life Insurance or Health Benefits carriers regarding a claim; to a Federal, State, or local law enforcement agency when your agency becomes aware of a violation or possible violation of civil or criminal law; to a Federal agency when conducting an investigation for employment or security reasons; to the Office of Personnel Management or the General Accounting Office when the information is required for evaluation of leave administration; or the General Services Administration in connection with its responsibilities for records management.

Public Law 104-134 (April 26, 1996) requires that any person doing business with the Federal Government furnish a social security number or tax identification number. This is an amendment to Title 31, Section 7701. Furnishing the social security number, as well as other data, is voluntary, but failure to do so may delay or prevent action on the application. If your agency uses the information furnished on this form for purposes other than those indicated above, it may provide you with an additional statement reflecting those purposes.

| Office of Personnel Management 5 CFR 630 | Local Reproduction Authorized | OPM Form 71 Rev. September 2009 Formerly Standard Form (SF) 71 Previous editions usable |
|---|---|---|

[ Print Form ]   [ Clear Form ]

000168

Please, notice the following facts:

1) I submitted my Request for a Leave Without Pay on the form OPM 71

2) I submitted my Request for a Leave Without Pay on May 17, 2017

3) The OPM 7 form contained a variety of **paid** leave options:

| 4. Type of Leave/Absence (Check appropriate box(es) below) | Date | | Time | | |
|---|---|---|---|---|---|
| | From | To | From | To | |
| ☐ Accrued Annual Leave | | | | | |
| ☐ Restored Annual Leave | | | | | |
| ☐ Advanced Annual Leave | | | | | |
| ☐ Accrued Sick Leave | | | | | |
| ☐ Advanced Sick Leave | | | | | |
| Purpose: ☐ Illness/injury/incapacitation of requesting employee | | | | | |
| ☐ Medical/dental/optical examination of requesting employee | | | | | |
| ☐ Care of family member, including medical/dental/optical examination of family member, or bereavement. | | | | | |
| ☐ Care of family member with a serious health condition | | | | | |
| ☐ Other | | | | | |
| ☐ Compensatory Time Off | | | | | |
| ☐ Other Paid Absence (Specify in Remarks) | | | | | |

1) Accrued Annual Leave

2) Restored Annual Leave

3) Advanced Annual Leave

4) Accrued Sick Leave

5) Advanced Sick Leave:

Purpose:

a) Illness/Injury/Incapacitation od requesting employee

b) Medical/Dental/Optical examination of requesting employee

c) Care of family member, including medical/dental/optical examination of family member, or bereavement

Second Motion to Strike Defendants' June 04, 2021 Answer; No. 3:18-cv-03748-JCS

d)  Care of family member with a serious health condition

e)  Other

6)  Compensatory Time Off

7)  Other Paid Absence.


Please, take a judicial notice of a material fact of the case that, despite I was **a full time** appointee (**ER 03748 Vol. 2, page 502**), and despite I was eligible for an Advanced Annual Leave and for an Advance Sick Leave, and despite these leave options were listed in the OPM 71 form, both Ms. Dunkelberger and Mr. Johnson never asked me to request an Advanced Annual Leave and/or an Advance Sick Leave, and both Ms. Dunkelberger and Mr. Johnson specifically stated that my only option was a Leave Without Pay (a LWOP.)

Please, also notice the AFGE Master Agreement, Article 35, Section 16 - Family and Medical Leave Act (FMLA) (**ER 03748 Vol. 3, page 870**),

A.  "Maternity and Paternity Leave

1.  **Under FMLA and this Agreement**, bargaining unit employees are entitled to 16 weeks of LWOP during any 12 month period for the following reasons:

a.  Birth of a son or daughter and the care of such son or daughter; and,

b.  Placement of a son or daughter for adoption or foster care.

2.  Supervisors are encouraged to approve additional leave as circumstances warrant.


B.  **Other family medical leave under FMLA and this Agreement**, bargaining unit employees are entitled to 12 weeks of LWOP during any 12 month period for one or more of the following reasons:

1.  The care of a family member of the employee with a serious health condition. Family member is defined as:

a.  Spouse and parents of spouse;

b.  Children, including adopted children; and,

c.  Parents.

1

2.   **A serious health condition of the employee that makes the employee unable**
**to perform the functions of the position of such employee**."

2

3

4   Therefore, pursuant to the AFGE Master Agreement, Article 35, Section 16(B)(2), I was

5   entitled to 12 weeks of a LWOP for a serious health condition **regardless whether or not I**

6   **worked at the VA for 12 months**.

7

8   Please, also notice the AFGE Master Agreement, Article 35, Section 16 - Family and

9   Medical Leave Act (FMLA) (**ER 03748 Vol. 3, page 874**),

10   "I. The Department **shall** inform its employees **of their entitlements** and responsibilities

11   under FMLA, including the requirements and obligations of employees."

12

13   Therefore, I am respectfully asking the Court to take a judicial notice of the following

14   **material facts** of the case.

15

16   **Material fact No. 1**.

17   On May 17, 2017, Mr. Johnson gave me an OPM 71 form and asked me to request a

18   leave Without Pay (a LWOP.) I followed instructions, and I requested a Leave Without Pay (a

19   LWOP, see (**ER 03748 Vol. 1, page 287**.)

20

| ☑ Leave Without Pay | 05.18.17-07.07.17 | | | required by |
| 6. Remarks: | To solve my health issues in Russia. | | | |

21

22   Please, notice that I didn't write "In-Vitro Fertilization" in my OPM 71 form, and I wrote

23   "To solve my health issues in Russia." I did it because I didn't know who would read the form,

24   and I was thinking about my privacy.

25

26   **Material fact No. 2.**

27   Dr. Prince denied my Request for a LROP on May 19. 2017.

28   See (**ER 03748 Vol. 1, page 287**.)

| 8d. Date |
| 5 - 19 - 2017 |

Second Motion to Strike Defendants' June 04, 2021 Answer; No. 3:18-cv-03748-JCS

1

**Material fact No. 3.**

2      Dr. Prince did not identify **even one reason** for the denial of my Request for a LWOP in

3   violation of the OPM 71 form that specifically said, "**If disapproved, give reason**. If annual

4   leave, initiate action to reschedule."

5      See (**ER 03748 Vol. 1, page 287**.)

6

7   *(If disapproved, give reason. If annual leave, initiate action to reschedule.)*

8   8b. Reason for Disapproval:

9

10

11     **Material fact No. 4.**

12     Ms. Dunkelbeger mailed a letter to my home postal address in Albuquerque, NM on June

13  12, 2017 which was **outside** of the **five business day** mandatory period that was imposed by 29

14  CFR § 825.300(b)(1.) See (**ER 03748 Vol. 1, 290**.)

15     **Read** 29 CFR § 825.300(b),

16     (1) When an employee requests FMLA

17  leave, or when the employer acquires knowledge

18  that an employee's leave may be for an FMLA-

19  qualifying reason, <u>the employer must notify the</u>

20  <u>employee of the employee's eligibility to take</u>

21  <u>FMLA leave **within five business days**</u>,

22  <u>absent extenuating circumstances</u>."



23

24     **Material fact No. 5.** Ms. Dunkelberger mailed this letter to my home postal address in

25  Albuquerque, NM while knowing that I would not receive this letter because at that time I was in

26  Russia. This letter was unclaimed, and it was returned back to the Agency. See (**ER 03748 Vol.**

27  **1, page 291**.)

28

Second Motion to Strike Defendants' June 04, 2021 Answer; No. 3:18-cv-03748-JCS

USPS.com® - USPS Tracking® Results

*02 6/28/17*   Page 1 of 4

# USPS Tracking® Results

**FAQs**   (http://faq.usps.com/?articleId=220900)

**Track Another Package** ✚

Remove

**Tracking Number:** 70141200000081360083



**In-Transit**

## Product & Tracking Information

**See Available Actions**

**Postal Product:**              **Features:**
                                Certified Mail™

| DATE & TIME | STATUS OF ITEM | LOCATION |
|---|---|---|
| June 13, 2017, 11:12 am | **Notice Left (No Authorized Recipient Available)** | **ALBUQUERQUE, NM 87108** |

▲

We attempted to deliver your item at 11:12 am on June 13, 2017 in ALBUQUERQUE, NM 87108 and a notice was left because an authorized recipient was not available. You may arrange redelivery by using the Schedule a Redelivery feature on this page or may pick up the item at the Post Office indicated on the notice beginning June 14, 2017. If this item is unclaimed by June 28, 2017 then it will be returned to sender.

| | | |
|---|---|---|
| June 13, 2017, 2:52 am | Departed USPS Facility | ALBUQUERQUE, NM 87101 |
| June 12, 2017, 9:01 pm | Arrived at USPS Facility | ALBUQUERQUE, NM 87101 |

https://tools.usps.com/go/TrackConfirmAction?tRef=fullpage&tLc=2&text28777=&tLabe...   6/21/2017

**000172**

Second Motion to Strike Defendants' June 04, 2021 Answer; No. 3:18-cv-03748-JCS

**Material fact No. 6.** The Agency **never emailed** me Dr. Prince's denial of my Request for a LWOP. Read Ms. Cormier's October 09, 2018 Proposed Order to the Motion to Dismiss my Original June 25, 2018 Complaint No. 3:18-cv-03748-JCS (**ER 03748 Vol. 2, page 414, lines 16-17**), "Meanwhile, plaintiff's request for leave without pay had been denied and a letter to that effect was sent to her mailing address, **but not emailed to her**."

**Material fact No. 7.** On June 30, 2017, the Agency terminated my employment (**ER 03748 Vol. 1, pages 293-29**4.) In its Termination Letter, the Agency **did not notify me** that my Request for a LWOP had been denied. See (**ER 03748 Vol. 1, pages 293**.)

2. The Associate Director, Patient Care Services, has recommended that you be terminated from your position for failure to qualify during your probationary period.  Your termination is due to attendance issues.

3. The effective date of your termination will be June 30, 2017.  The decision to terminate you immediately in lieu of a two (2) week notice is due to your absent without leave (AWOL) status since May 21, 2017.  You must properly clear the facility, turn in any government property to your supervisor and clear any indebtedness prior to the release of your final paycheck.

**Material fact No. 8**. I learned the first time that Dr. Prince denied my Request for a LWOP only during the Mediation with Ms. Dunkelberger on **September 07, 2017**.

Also, I am asking the Court to take a Judicial Notice of the following statute.

5 CFR § 630.1208 - Medical certification.

"(a) An agency **may** require that a request for leave under § 630.1203(a) (3) or (4) be supported by written medical certification issued by the health care provider of the employee or the health care provider of the spouse, son, daughter, or parent of the employee, as appropriate. An agency **may waive the requirement for an initial medical certificate** in a subsequent 12-month period if the leave under § 630.1203(a) (3) or (4) is for the same chronic or continuing condition.

(b) The written medical certification shall include -

(1) The date the serious health condition commenced;

Second Motion to Strike Defendants' June 04, 2021 Answer; No. 3:18-cv-03748-JCS

(2) The probable duration of the serious health condition or specify that the serious health condition is a chronic or continuing condition with an unknown duration and whether the patient is presently incapacitated and the likely duration and frequency of episodes of incapacity;

(3) The appropriate medical facts within the knowledge of the health care provider regarding the serious health condition, including a general statement as to the incapacitation, examination, or treatment that may be required by a health care provider;

(4) For the purpose of leave taken under § 630.1203(a)(3) of this part -

(i) A statement from the health care provider that the spouse, son, daughter, or parent of the employee requires psychological comfort and/or physical care; needs assistance for basic medical, hygienic, nutritional, safety, or transportation needs or in making arrangements to meet such needs; and would benefit from the employee's care or presence; and

(ii) A statement from the employee on the care he or she will provide and an estimate of the amount of time needed to care for his or her spouse, son, daughter, or parent;

(5) For the purpose of leave taken under § 630.1203(a)(4), a statement that the employee is unable to perform one or more of the essential functions of his or her position or requires medical treatment for a serious health condition, based on written information provided by the agency on the essential functions of the employee's position or, if not provided, discussion with the employee about the essential functions of his or her position; and

(6) In the case of certification for intermittent leave or leave on a reduced leave schedule under § 630.1203(a) (3) or (4) for planned medical treatment, the dates (actual or estimates) on which such treatment is expected to be given, the duration of such treatment, and the period of recovery, if any, or specify that the serious health condition is a chronic or continuing condition with an unknown duration

Second Motion to Strike Defendants' June 04, 2021 Answer; No. 3:18-cv-03748-JCS

1           and whether the patient is presently incapacitated and the likely duration and

2           frequency of episodes of incapacity.

3      (c) The information on the medical certification shall relate only to the serious health

4 condition for which the current need for family and medical leave exists. The agency may not

5 require any personal or confidential information in the written medical certification other than

6 that required by paragraph (b) of this section. If an employee submits a completed medical

7 certification signed by the health care provider, the agency may not request new information

8 from the health care provider. However, a health care provider representing the agency,

9 including a health care provider employed by the agency or under administrative oversight of the

10 agency, may contact the health care provider who completed the medical certification, with the

11 employee's permission, for purposes of clarifying the medical certification.

12      (d) <u>If the agency doubts the validity of the original certification provided under paragraph</u>

13 <u>(a) of this section, the agency may require, at the agency's expense, that the employee obtain the</u>

14 <u>opinion of a second health care provider designated or approved by the agency concerning the</u>

15 <u>information certified under paragraph (b) of this section</u>. Any health care provider designated or

16 approved by the agency shall not be employed by the agency or be under the administrative

17 oversight of the agency on a regular basis unless the agency is located in an area where access to

18 health care is extremely limited - e.g., a rural area or an overseas location where no more than

19 one or two health care providers practice in the relevant specialty, or the only health care

20 providers available are employed by the agency.

21      (e) If the opinion of the second health care provider differs from the original certification

22 provided under paragraph (a) of this section, the agency may require, at the agency's expense,

23 that the employee obtain the opinion of a third health care provider designated or approved

24 jointly by the agency and the employee concerning the information certified under paragraph (b)

25 of this section. The opinion of the third health care provider shall be binding on the agency and

26 the employee.

27      (f) To remain entitled to family and medical leave under § 630.1203(a) (3) or (4) of this

28 part, an employee or the employee's spouse, son, daughter, or parent must comply with any

requirement from an agency that he or she submit to examination (though not treatment) to obtain a second or third medical certification from a health care provider other than the individual's health care provider.

(g) <u>If the employee is unable to provide the requested medical certification before leave begins, or if the agency questions the validity of the original certification provided by the employee and the medical treatment requires the leave to begin,</u> the agency **shall** grant **provisional leave pending final written medical certification**.

(h) An employee must provide the written medical certification required by paragraphs (a), (d), (e), and (g) of this section, signed by the health care provider, no later than 15 calendar days after the date the agency requests such medical certification. If it is not practicable under the particular circumstances to provide the requested medical certification no later than 15 calendar days after the date requested by the agency despite the employee's diligent, good faith efforts, the employee must provide the medical certification within a reasonable period of time under the circumstances involved, but no later than 30 calendar days after the date the agency requests such medical certification.

(i) **If, after the leave has commenced**, the employee fails to provide the requested medical certification, the agency may -

(1) **Charge the employee as absent without leave (AWOL)**; or

(2) **Allow the employee to request that the provisional leave be charged as leave without pay or charged to the employee's annual and/or sick leave account, as appropriate**.

(j) **At its own expense, an agency may require subsequent medical recertification on a periodic basis**, but not more than once every 30 calendar days, for leave taken for purposes relating to pregnancy, chronic conditions, or long-term conditions, as these terms are used in the definition of serious health condition in § 630.1202. For leave taken for all other serious health conditions and including leave taken on an intermittent or reduced leave schedule, if the health care provider has specified on the medical certification a minimum duration of the period of incapacity, the agency may not request recertification until that period has passed. An agency

may require subsequent medical recertification more frequently than every 30 calendar days, or more frequently than the minimum duration of the period of incapacity specified on the medical certification, if the employee requests that the original leave period be extended, the circumstances described in the original medical certification have changed significantly, or the agency receives information that casts doubt upon the continuing validity of the medical certification.

(k) To ensure the security and confidentiality of any written medical certification under § 630.1208 or 630.1210(h) of this part, the medical certification is subject to the provisions for safeguarding information about individuals under subpart A of part 293 of this chapter.

[58 FR 39602, July 23, 193, as amended at 61 FR 64453, Dec. 5, 1996; 65 FR 26487, May 8, 2000; 65 FR 38409, June 21, 2000. Redesignated and amended at 76 FR 60704, 60705, Sept. 30, 2011]"


Therefore, I am respectfully asking the Court to judicially notice that, pursuant to 5 CFR § 630.1208:

1) It was **IMMATERIAL**:

    a) Whether or not I provided my medical certification **whatsoever** before taking a 2017 trip to Russia. See 5 CFR § 630.1208(a), "An agency **may** require that a request for leave under § 630.1203(a) (3) or (4) be supported by written medical certification issued by the health care provider of the employee…" Please, notice that the plain language of the statute has a word "**may**" which is **permissive** and not mandatory. Please, notice that the plain language of 5 CFR § 630.1208(a) doesn't contain a mandatory word "shall." Please, also notice that the plain language of 5 CFR § 630.1208(a) says, "An agency **may waive the requirement for an initial medical certificate**." Therefore, pursuant to 5 CFR § 630.1208(a), I **did not** have a mandatory obligation to provide my medical certification to Ms. Dunkelberger prior to taking my 2017 trip to Russia.

Second Motion to Strike Defendants' June 04, 2021 Answer; No. 3:18-cv-03748-JCS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

    b) Whether or not I provided my medical certification **on Russian or on English** language prior or after my 2017 trip to Russia. Please, see  5 CFR § 630.1208(d), "<u>If the agency doubts the validity of the original certification provided under paragraph (a) of this section, the agency may require, at the agency's expense, that the employee obtain the opinion of a second health care provider designated or approved by the agency concerning the information certified under paragraph (b) of this section</u>." Please, notice that Defendants confirmed in their June 04, 2021 Answer that I authorized Ms. Das to preliminary translate my medical document from Russian into English, see page 5, lines 8-9, "Defendants admit that Plaintiff asked and gave consent to Ms. Das to translate a document from Russian to English."

    c) **Whether or not** Ms. Dunkelberger, Mr. Johnson, Dr. Prince, or whoever else **approved** my Request for a Leave (any kind of a leave, not necessarily a Leave Without Pay) prior to my 2017 trip to Russia. See 5 CFR § 630.1208(g), "<u>If the employee is unable to provide the requested medical certification before leave begins, or if the agency questions the validity of the original certification provided by the employee and the medical treatment requires the leave to begin</u>, the agency **shall** grant **provisional leave pending final written medical certification**." Please, notice that the plain language of 5 CFR § 630.1208(g) imposes **a mandatory obligation** (the word "**shall**") on the Agency to grant ne with a **provisional leave** pending final written medical certification. Please, notice that Defendabts failed to follow **a mandatory obligation** to provide me with a provisional leave pending final written medical certification.

2) Defendants **didn't have any right** to place me on the Absent Without Leave (the AWOL) status starting **May 21, 2017**. See 5 CFR § 630.1208,

Second Motion to Strike Defendants' June 04, 2021 Answer; No. 3:18-cv-03748-JCS

1    "(i) **If, after the leave has commenced**, the employee fails to provide the

2    requested medical certification, the agency **may**[2] -

3        (1) **Charge the employee as absent without leave (AWOL)**; or

4        (2) **Allow the employee to request that the provisional leave be**

5        **charged as leave without pay or charged to the employee's annual**

6        **and/or sick leave account, as appropriate**."

7

8    Therefore, the Agency had a mandatory obligation **to wait until I return back from**

9    **Russia** and **afterwards** to do either:

10   1) To charge me with an AWOL

11   2) To allow me to apply for any kind of a paid leave (Advanced Sick Leave, Advanced

12       Annual Leave, Voluntary Leave Transfer Program, etc.)

13

14   In fact, the Agency placed me on the **AWOL** status starting **May 21, 2017** (**ER 03748**

15   **Vol. 1, pages 297-299**) in violation of 5 CFR § 630.1208(i) and subsequently fired me (**ER**

16   **03748 Vol. 1, pages 293-294**) without giving me a Notice and an opportunity to be heard.

```
DRSVALEVA,TATYANA E          T&L 221   Telework Ind: None    ████████

     Date      TW  Scheduled Tour        Tour Exceptions
-----------------------------------------------------------------------
Sun 14-May-17      07:30P-08:00A
Mon 15-May-17      07:30P-08:00A
Tue 16-May-17      07:30P-08:00A
Wed 17-May-17      11:30P-08:00A
Thu 18-May-17      Day Off
Fri 19-May-17      Day Off
Sat 20-May-17      Day Off
Sun 21-May-17      07:30P-08:00A        07:30P-08:00A    WP LWOP
                                        AWOL

        INAPPROPRIATE LEAVE REQUEST
Mon 22-May-17      07:30P-08:00A        07:30P-08:00A    WP LWOP
                                        AWOL

        INAPPROPRIATE LEAVE REQUEST
Tue 23-May-17      07:30P-08:00A        07:30P-08:00A    WP LWOP
                                        AWOL

        INAPPROPRIATE LEAVE REQUEST
Wed 24-May-17      Day Off
Thu 25-May-17      Day Off
Fri 26-May-17      Day Off
Sat 27-May-17      Day Off
```

---

[2] Permissive, **not** mandatory.

Second Motion to Strike Defendants' June 04, 2021 Answer; No. 3:18-cv-03748-JCS

**Conclusion.**

I am respectfully asking the Court to strike Zack's June 04, 2021 Answer it its entirety because it is unsworn and violates 28 U.S.C. § 1746. I am also asking to strike Zack's June 04, 2021 Answer because it its entirety because it violates the F.R.C.P. Rule 11(b.) The June 04, 2021 Answer is hearsay that is not supposed to be reviewed at all. As an alternative, I am asking the Court to partially strike Zack's June 04, 2021 Answer for the reasons specified above and below.

Specifically, I am respectfully asking to strike Zack's statements that:

1) **That I was not entitled for an FMLA** leave because **I didn't work at the VA for 12 months** because it is immaterial, see the AFGE Master Agreement, Article 35, Section 16 - Family and Medical Leave Act (FMLA), Subdivision (B)(2.) Pursuant to the FMLA and the AFGE Master Agreement, I was entitled to 12 weeks of an unpaid leave per year **for a serious health condition** regardless **whether or not I worked at the VAMC for 12 months**.

2) That I didn't submit my medical certification **at all** prior on May 17, 2017 together with my OPM 71 form because it is immaterial, see 5 CFR § 630.1208(a) and the 42 U.S.C. § **12112(d)(4)(A)**'s **medical inquiry prohibition**. *Taylor v. City of Shreveport*, 798 F.3d 276,283 (5th Cir. 2015).

3) That I didn't submit my medical certification **on English language** prior to my May 18, 2017 trip to Russia because it is immaterial, see 5 CFR § 630.1208(d)

4) That **on May 19, 2017 Dr. Prince disapproved my Request for a LWOP** because it is immaterial, see 5 CFR § 630.1208(g) (a mandatory obligation to give me a provisional leave pending the final medical certification.)


I declare under the penalty of perjury and under the Federal laws that all foregoing is true and correct. Executed at San Francisco, CA on June 19, 2021.


Respectfully submitted,

Second Motion to Strike Defendants' June 04, 2021 Answer; No. 3:18-cv-03748-JCS

s/ Tatyana Drevaleva

Plaintiff Pro Se

June 19, 2021.

Second Motion to Strike Defendants' June 04, 2021 Answer; No. 3:18-cv-03748-JCS