Tatyana Evgenievna Drevaleva

3015 Clement St., Apt. 204,

San Francisco, CA, 94121

415-954-2116, tdrevaleva@gmail.com

Plaintiff in Pro Per

THE UNITED STATES DISTRICT COURT

FOR NORTHERN CALIFORNIA

| | |
|---|---|
| Tatyana E. Drevaleva ) <br> ) <br>     *Plaintiff*, ) <br> ) <br>     vs. ) <br> ) <br> 1) The U.S. Department of Veterans Affairs ) <br> ) <br> 2) Mr. Denis Richard McDonough in his capacity as a Secretary of the U.S. Department of Veterans Affairs ) <br> ) <br> 810 Vermont Avenue, NW, Washington, D.C. 20420 ) <br> ) <br>     *Defendant* ) <br> Facility: ) <br>     New Mexico VA Healthcare System <br>     1501 San Pedro Drive, S.E. <br>     Albuquerque, NM, 87108 ) | Case No. 3:18-cv-03748-JCS <br><br> Notice of Motion; First Motion to Transfer my Lawsuit No. 3:18-cv-03748-JCS to the District Court of New Mexico for a Jury Trial, Article III, Section 2 of the U.S. Constitution; *Young v. United Parcel Service, Inc*., 575 U.S. ___ (2015); the F.R.C.P. Rules 38 and 39; 42 U.S. Code § 1981a(c); Memorandum of Points and Authorities; Declaration; Proposed Order. <br><br> Date: August 20, 2021 <br> Time: 09:30 AM <br> Location: Courtroom F – 15th Floor <br> 450 Golden Gate Avenue, <br> San Francisco, CA 94102 <br> Judge: The Hon. Chief Magistrate <br>       Judge Joseph C. Spero |

Page **1** of **18**

First Motion to Transfer my Lawsuit to New Mexico for a Jury Trial; No. 3:18-cv-03748-JCS

1   TO THE HONORABLE COURT, ALL PARTIES, AND COUNSEL ON RECORD.

2   NOTICE IS HEREBY GIVEN that on 08/20/2021 at 09:30 AM or as soon thereafter as
3   the matter may be heard in Courtroom F at the 15th Floor of the District Court for Northern
4   California located at 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiff Pro Se
5   Tatyana Drevaleva will move the Court the first time for an Order that transfers my lawsuit No.
6   3:18-cv-03748-JCS to the District Court of New Mexico for a Jury trial on the issues of the fact
7   pursuant to *Young v. United Parcel Service, Inc.*, 575 U.S. ___ (2015) and the F.R.C.P. Rules 38
8   and 39, for a Jury trial of a crime that was denying my right to work on account of sex in
9   violation on 18 U.S.C. § 246, see Article III, Section 2 of the U.S. Constitution, and also for
10  determining the compensatory and punitive damages pursuant to 42 U.S. Code § 1981a(c.)

11  Said the First Motion to Transfer shall be based on this Notice, the attached First Motion
12  to Transfer my lawsuit No. 3:18-cv-03748-JCS to the District Court of New Mexico for a Jury
13  trial pursuant to Article III, Section 2 of the U.S. Constitution, pursuant to the F.R.C.P. Rules 38
14  and 39, and pursuant to *Young v. United Parcel Service, Inc.*, 575 U.S. ___ (2015), and also for
15  determining the compensatory and punitive damages pursuant to 42 U.S. Code § 1981a(c), the
16  attached Memorandum of Points and Authorities, the attached Declaration, the pleadings and
17  papers on file, and on such additional maters as may be presented to the Court prior to or at the
18  hearing.

21  Dated: July 15, 2021          Signed: Tatyana Drevaleva

First Motion to Transfer my Lawsuit to New Mexico for a Jury Trial; No. 3:18-cv-03748-JCS

# TABLE OF CONTENTS

I. Statement of Facts…………………………………………………………………………...6

II. Legal Standard……………………………………………………………………………...14

III. Conclusion……………………………………………………………………………………17

# TABLE OF AUTHORITIES

**Statutes**

The U.S. Constitution………………………………………………………………………………14

    The Seventh Amendment to the U.S. Constitution………………………………………16

The Family Medical Leave Act ("FMLA")………………………………………………………..12

The Pregnancy Discrimination Act ("PDA") or 42 U.S.C. § 2000e(k)……………………...11, 12

Title VII of the Civil Rights Act of 1964,

    42 U.S.C. §§ 2000e–2000e-17…………………………………………………………11, 12

Title VII, as amended by the Pregnancy Discrimination Act…………………………………….13

The United States Code

    18 U.S.C. § 241……………………………………………………………………………..14

    18 U.S.C. § 246……………………………………………………………………………..2, 14

    42 U.S. Code § 1981a(b)(3)………………………………………………………………...17

    42 U.S. Code § 1981a(c)…………………………………………………………………….2, 17

The Federal Rules of Civil Procedure

    F.R.C.P. Rule 5(d)…………………………………………………………………………16

    F.R.C.P. Rule 38…………………………………………………………………………….2, 16

    F.R.C.P. Rule 39…………………………………………………………………………….2, 16

Article III, Section 2 of the U.S. Constitution……………………………………………………...2, 15

**Case Law**

*Alena Fassbender v. Correct Care Solutions, LLC*, No. 17-3054
  (10th Circuit, 2018)……………………………………………………………………11

*Bogustawa Frey v. Hotel Coleman, et al.*, No. 17-2267 (7th Circuit, 2018)………………….11

*Byrd v. Lakeshore Hosp.*, 30 F.3d 1380, 1383 (11th Cir. 1994)………………………………14

*Carine Armindo v. Padlocker, Inc.*, 209 F.3d 1319 (11th Cir. 2000)……………………….14

*General Elec. Co. v. Gilbert*, 429 U. S. 125 (1976)………………………………………...16

*Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.,*
  *UAW v. Johnson Controls, Inc.*, 499 U.S. 187, 206-07, 211 (1991)……………………..13

*Jarretta P. Hamilton v. Southland Christian School, Inc.*,
  No. 11-13696 (11th Circuit, 2012)……………………………………………………11

*Jennifer Hitchcock v. Angel Corps, Inc.*, No. 12-3515 (7th Circuit, 2013)…………………...11

*Khadara-Ayan Yousuf v. Fairview Health Services,*
  *doing business as University of Minnesota*
  *Medical Center, Fairview*, No. 14-3687 (8th Circuit, 2015)…………………………….13

*Kimberlie Michelle Durham v. Rural/Metro Corporation*,
  18-14687 (11th Circuit, 2020)………………………………………………………...11

*Laura A. Makowski v. Smithamundsen LLC,*
  *Glen E. Amundsen and Michael Delargy*,
  No. 10-3330 (7th Circuit, 2011)………………………………………………………12

*Legg et al. v. Ulster County et al.*, No. 14-3636 (L),
  No. 14-3638 (XAP), and No. 14-4635 (CON) (2nd Cir., 2015)…………………………11

*Mary E. Grigsby v. Universal Foods Corporation;*
  *Does I Through X*, 999 F.2d 543 (9th Cir. 1993)……………………………………...12

*McDonnell Douglas Corp. v. Green*, 411 U. S. 792……………………………………..15

*Mixon v. Fair Employment and Housing Comm'n*,
  237 Cal. Rptr. 884, 890 (Cal.App.1987)……………………………………………12

*Nicole LaPoint v. Family Orthodontics, P. A.*,

    State of Minnesota,  In Court of Appeals,

      A15-0396, Hennepin County District Court File

        No. 27-CV-13-18122, Filed December 14, 2015…………………………………………..13

*Stephanie Hicks v. City of Tuscaloosa, Alabama*,

      No. 16-13003 (11th Circuit, 2017)……………………………………………………11

*Texas Dept. of Community Affairs v. Burdine*, 450 U. S. 248 (1981)……………………………16

*Walsh v. Nat'l Computer Sys., Inc.*, 332 F.3d 1150, 1160 (8th Cir. 2003)………………………13

*Young v. United Parcel Service, Inc.*, 575 U.S. ___ (2015)…………………………………..2, 15

# MEMORANDUM OF POINTS AND AUTHORITIES

**Statement of Facts.**

The facts of this case are undisputed. On May 17, 2017, I obtained a verbal permission of Assistant Manager of the 5D (Telemetry) Unit of the New Mexico VA Health Care System Mr. Phil Johnson to go to Russia to refill a prescription of my hormonal pills Jeanine that were not available in the United States and to perform an In-Vitro Fertilization (IVF) attempt. On May 17, 2017, I submitted an OPM 71 form to the Managers office. In this form, I requested a Leave Without Pay from May 18 to July 07, 2017. Please, notice that I requested a Leave Without Pay because both Manager Ms. Dunkelberger and Assistant Manager Mr. Phil Johnson "fraudulently concealed available leave options" (see the November 18, 2020 unopposed by Defendants Memorandum of the 9th Circuit in Appeal No. 19-16395) and didn't inform me that I was entitled to an Advanced Sick Leave or to any other available paid leave option.

On May 18, 2017, I left to Russia. On May 18, 2017, Mr. Phil Johnson "failed to provide a full explanation of the reason for [my] leave to the medical staff responsible for approving the leave request" (see the November 18, 2020 unopposed by Defendants Memorandum of the 9th Circuit in Appeal No. 19-16395.) Both Ms. Dunkelberger and Mr. Johnson never informed me that my May 17, 2017 OPM 71 form was denied. Instead, starting May 21, 2017, Ms. Dunkelberger placed me on the Absent Without Leave (AWOL) status without notifying me. On June 09, 2017, Ms. Dunkelberger consulted with specialist of Human Resources of the New Mexico VA Health Care System Ms. Rhonda Anderson about how to fire me (**ER 03748 Vol. 1, page 230**.) Ms. Dunkelberger informed Ms. Anderson that I had been on the AWOL status since May 21, 2017., and Ms. Dunkelberger discussed with Ms. Anderson that, pursuant to the alleged Human Resources policy, my denied May 17, 2017 Request for a LWOP should be mailed <u>to my home postal address in Albuquerque, NM</u>. Please, notice that throughout the entire litigation No. 3:18-cv-03748-JVS and Appeal No. 19-16395 Defendants failed to present a copy of this alleged Human Resources "policy" to the attention of the U.S. District Court for the Northern District of California and to the attention of the 9th Circuit.

1  See (**ER 03748 Vol. 1, page 230**),

10. Did you consult with H.R. or any other management officials regarding the termination? yes

11. If so, who did you discuss it with? Rhonda Anderson

12. When was is discussed? June 9, 2017

13. What was discussed?

We discussed that the complainants request for LWOP from May 18, 2017 through July 7, 2017 was denied, that the complainant had been in AWOL status since May 21, 2017, and that a Leave Request Clarification Memo notifying the complaint of this should be mailed to the complainants home of record; per Human Resource rules and regulations.

14. What policy or regulation supports terminating the complainant in these circumstances? (Please provide that policy to the investigator for the record). MCM 05-11 Title 5 Leave Policy, MCM 05-8 Tours of Duty, MCM 05-48 Employee Courtesy and Conduct, Master Agreement between the Department of Veterans Affairs and the American Federation of Government Employees (2011), Article 35 Section 10, Leave Without Pay (LWOP), and memo for established phone numbers and unplanned leave.

On June 12, 2017, Ms. Dunkelberger hired young male employee Mr. David Williams who had a lower grade GS-6. On June 12, 2017, Ms. Dunkelberger mailed a denied OPM 71 form to my home postal address in New Mexico while knowing that I would not receive this letter, and I wouldn't be able to respond to this letter because at that time I was in Russia. Please, notice that Ms. Dunkelberger didn't email this letter to me despite she knew my email address. Please, notice that the June 12, 2017 letter was unclaimed, and it was returned back to the VAMC. Regardless, Ms. Dunkelberger informed Dr. Tina Prince:

1) that my may 17, 2017 request for a LWOP had been denied
2) that on June 12, 2017 a letter was mailed to my hone postal address in Albuquerque, NM informing me that my request for a LWOP had been denied and demanding me to return back to work to the VAMC
3) that I didn't respond to the June 12, 2017 letter
4) that I didn't return back to work,

Page **7** of **18**

First Motion to Transfer my Lawsuit to New Mexico for a Jury Trial; No. 3:18-cv-03748-JCS

and Ms. Dunkelberger obtained Dr. Prince's permission to fire me. Please, notice that Dr. Prince didn't know that the purpose of my trip to Russia was an IVF procedure. Please, notice that, prior to firing me, Dr. Prince didn't speak to me and didn't consult with another Manager.

See (**ER 03748 Vol. 1, pages 243-244**),

```
24             What was your role in the circumstances
25       surrounding this event?
 1       A     My role would have been to review the evidence
 2       packet with Ms. Dunkelberger and Ms. Bonin and to
 3       concur with the requested termination.
 4       Q     Okay.  What was your justification for your
 5       actions when these events occurred and the complainant
 6       was terminated?
 7       A     From what I remember, the evidence packet was
 8       pretty solid as far as the AWOLs, the attempt to
 9       contact, the letters sent to the only address we had,
10       because our HR requires we send certified letters to
11       the address of record.  That was completed with no
12       response; and therefore, I supported the request for
13       termination during probation.
14       Q     Did you discuss the termination with the
15       complainant prior to her being terminated?
16       A     No, sir.
17       Q     Besides the HR person that you've already
18       identified or you could not remember, was there
19       anybody, any other manager, besides Ms. Dunkelberger,
20       was there any other manager that you discussed this
21       with?
22       A     No, sir.
```

First Motion to Trunsfer my Lawsuit to New Mexico for a Jury Trial; No. 3:18-cv-03748-JCS

1   Please, see Dr. Prince's EEO Interrogatory where she claimed that she didn't know that I
2   was absent from work because I was in Russia for the purpose of an IVF procedure (**ER 03748**
3   **Vol. 1, page 245**),

> 2   Q   Was the complainant's disability of being
> 3   infertile a factor when this occurred?
> 4   A   No. I had no knowledge that that was her
> 5   concern that she was missing work for.

Subsequently, Ms. Dunkelberger actively spread Libel that I had been fired because I had failed to follow the proper leave policies to request a LWOP, and that the staff morale was negatively affected because I didn't know up to work. Please, see (**ER 03748 Vol. 1, page 232**),

> 33  Do you have anything to offer the complainant in resolution of this claim?
> The complainant was terminated during probationary status as a result of not following proper leave policies and procedures.
>
> 34  Is there anything else pertinent to these specific events that we have not discussed?
> The complainant's AWOL status negatively impacted patient care and delayed completion of the complainants orientation. Staff morale is negatively affected as a result of a coworker not showing up for scheduled tours.
>
> The complainant signed, was given a copy of, and verbalized understanding of MCM 05-11 Title 5 Duty and Leave Policy, MCM 05-8 Tours of Duty, and MCM 05-48 Employee Courtesy and Conduct, and a memo for established phone numbers and unplanned leave on April 18, 2017 (see supporting documentation).
>
> The complainant was notified on multiple occasions the process to appropriately request leave for an extended period of time and that the unit level management team did not have the approval to grant such leave.

I can demonstrate by the preponderance of the evidence that Ms. Dunkelberger hired **two male employees** Mr. David Williams and Mr. David Trujillo. Please, see (**ER 03748 Vol. 1, page 275.**)

> c.  David Williams, Medical Instrument Technician. GS-0649-06, full time.
> d.  David Trujillo, Medical Instrument Technician, GS-0649-05, full time

First Motion to Transfer my Lawsuit to New Mexico for a Jury Trial; No. 3:18-cv-03748-JCS

1  Please, notice that in her July 08, 2021 Opposition to my First Motion for Judgment on
2 the Pleadings (Doc. No. 425(, Ms. Zack **didn't** oppose my assertion that Ms. Dunkelberger had
3 hired both Mr. Williams and Mr. Trujillo. Please, also notice that in my First Motion for
4 Judgment on the Pleadings I demonstrated by the preponderance of the evidence that Ms.
5 Dunkelberger had hired Mr. Williams on June 12, 2017 to which Ms. Zack **didn't** oppose.
6 Please, notice that during the EEO investigation Ms. Dunkelberger claimed that, **as of**
7 **November 20, 2017**, she hadn't hired anybody to substitute me, see (**ER 03748 Vol. 1, page**
8 **275**),

> 4. If complainant's position subsequently filled… – As of today, November 20, 2017, this position has not been filled.

10 Please, notice that during the EEO investigation Ms. Dunkelberger kept claiming that no
11 one employee had attendance issues excepting me, see (**ER 03748 Vol. 1, page 275**),

> 5. Summary data on leave use… - As of today, November 20, 2017, there have been no time and attendance issues for those employees in the Medical Instrument Technician role with the exception of the complainant Ms. Drevaleva.

14 Also, please, notice that during the EEO investigation, in her March 08, 2018
15 Interrogatory, Ms. Dunkelberger lied that she had hired **one male and one female** to substitute
16 my employment, see (**ER 03748 Vol. 1, page 231**),

> 24. The complainant claims that two young males were hired to replace her position because they would not have pregnancy issues. How do you respond?
>
> Two vacancies for the Medical Instrument Technician position have been filled since the complainants termination. One vacancy was filled by a male and the other by a female.

21 Please, notice that Ms. Dunkelberger failed to identify the names and the hiring dates of
22 the male and the female whom Ms. Dunkelberger had allegedly hired. Please, notice that
23 throughout the entire litigation No. 3:18-cv-03748-JCS and Appeal No. 19-16395, both Ms.
24 Robinson and Ms. Zack failed to identify the names and the hiring dates of the male and the
25 female whom Ms. Dunkelberger had allegedly hired.
26 Please, read my August 13, 2020 Supplemental Brief (Doc. No. 280) that is devoted to
27 Pretext in the Pregnancy Discrimination cases. In that Brief, I discussed the following case laws:
28

First Motion to Transfer my Lawsuit to New Mexico for a Jury Trial; No. 3:18-cv-03748-JCS

1) *JARRETTA P. HAMILTON v. SOUTHLAND CHRISTIAN SCHOOL, INC*., No. 11-13696 (11th Circuit, 2012)

2) *JENNIFER HITCHCOCK v. ANGEL CORPS, INC.*, No. 12-3515 (7th Circuit, 2013.)

Please, also read my August 04, 2020 Supplemental Brief (Doc. No. 274) where I discussed the case laws that described the "**similarly situated**" definition **within the meaning of the Pregnancy Discrimination Act** ("similar in their ability or inability to work", see the Pregnancy Discrimination Act or 42 U.S.C. § 2000e(k)):

1) *STEPHANIE HICKS, Plaintiff-Appellee, versus CITY OF TUSCALOOSA, ALABAMA*, No. 16-13003, 11th Circuit, September 7, 2017

2) *Legg et al. v. Ulster County et al.*, No. 14-3636 (L), No. 14-3638 (XAP), and No. 14-4635 (CON) (2nd Cir., 2015.)

Read *BOGUSTAWA FREY v. HOTEL COLEMAN, et al.*, No. 17-2267 (7th Circuit, 2018), "One week after she returned from maternity leave, Vaughn fired her for allegedly stealing another employee's cell phone."

Read *ALENA FASSBENDER v. CORRECT CARE SOLUTIONS, LLC*, No. 17-3054 (10th Circuit, 2018), "Correct Care Solutions, LLC (CCS) terminated Alena Fassbender's employment—ostensibly for violating CCS policy. But Fassbender, who was pregnant at the time of her termination, argues there is more to this story than meets the eye. She asserts that CCS terminated her because it had one too many pregnant workers in Fassbender's unit, which posed a problem for her supervisor. We conclude that a reasonable jury could believe Fassbender's version of events. Accordingly, we reverse the portion of the district court's order granting CCS summary judgment on Fassbender's pregnancy discrimination claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e-17."

Read *KIMBERLIE MICHELLE DURHAM v. RURAL/METRO CORPORATION*, 18-14687 (11th Circuit, 2020), "Plaintiff-Appellant Kimberlie Durham's job as an emergency medical technician ("EMT") for Defendant-Appellee Rural/Metro Corporation ("Rural") required her to lift 100 pounds regularly. So when Durham's physician advised her to refrain from lifting more than 50 pounds while she was pregnant, Durham asked Rural for a temporary

light-duty or dispatcher assignment for the duration of her pregnancy. Rural had provided these same accommodations to other EMTs who had suffered injuries on the job and were restricted to lifting no more than 10 or 20 pounds as a result. On the other hand, Rural had a policy of not granting such accommodations to employees who had been injured off the job. Rural also had a policy that allowed it to accommodate those with disabilities on a case-by-case basis."

Read *LAURA A. MAKOWSKI v. SMITHAMUNDSEN LLC, GLEN E. AMUNDSEN AND MICHAEL DELARGY*, No. 10-3330 (7th Circuit, 2011), "Lisa Makowski, an employee of SmithAmundsen, LLC ("SmithAmundsen"), took leave under the Family Medical Leave Act ("FMLA") beginning just before the birth of her child and continuing after the birth. While Makowski was on leave, her supervisors informed her that her position was eliminated as part of an organizational restructuring and terminated her employment. Makowski filed suit against SmithAmundsen, Glen E. Amundsen, and Michael DeLargy, alleging pregnancy discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended by the Pregnancy Discrimination Act ("PDA"); interference with Makowski's exercise of her rights under the FMLA; retaliation under the FMLA; and a violation of her right to a bonus under the FMLA. The district court granted summary judgment in favor of the defendants. On appeal, Makowski challenges an evidentiary ruling denying the admission of statements allegedly made by the Human Resources Director; the district court's failure to consider all of Makowski's additional evidence in the record; and the district court's grant of summary judgment in favor of the defendants on the pregnancy discrimination claim and FMLA interference and retaliation claims. For the reasons set forth below, we reverse."

Read *Mary E. Grigsby, Plaintiff-appellant, v. Universal Foods Corporation; Does I Through X, Defendants-appellees*, 999 F.2d 543 (**9th Cir. 1993**), "Grigsby claims that Universal terminated her because she was pregnant, and sues for pregnancy discrimination under California law. California has adopted the presumptions developed under federal law "to achieve a fair determination of the 'elusive factual question of intentional discrimination' " where, as here, the employee does not have direct evidence of discrimination. *Mixon v. Fair Employment and Housing Comm'n*, 237 Cal. Rptr. 884, 890 (Cal.App.1987) (internal citation omitted). The

employee must first establish a prima facie case; the burden then shifts to the employer to offer a legitimate reason for the action; the burden then shifts to the employee to prove that the offered reason is pretextual. *Id*.

To make out **the prima facie case**, the employee must prove the following four elements: (1) He or she belongs to a protected class; (2) his or her job performance was satisfactory; (3) an adverse employment decision was made against him or her; and (4) "others not in the protected class were retained in similar jobs, and/**or his [or her] job was filled by an individual of comparable qualifications not in the protected class**." *Id*. Here, Grigsby does not provide enough evidence to raise a genuine issue as to the fourth element. She has presented no evidence to show that she was replaced, and has presented no evidence to show that there were any employees similarly situated to herself. The only evidence that she presents is her own declaration that no one else was terminated when she was. This by itself is insufficient to satisfy the fourth element."

Read *Khadara-Ayan Yousuf v. Fairview Health Services, doing business as University of Minnesota Medical Center, Fairview*, No. 14-3687 (8th Circuit, 2015), "The district court failed to recognize, however, that Title VII, as amended by the Pregnancy Discrimination Act, also prohibits an employer from discriminating against a woman because of her **capacity** to become pregnant. See Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am., UAW v. Johnson Controls, Inc., 499 U.S. 187, 206-07, 211 (1991); cf. Walsh v. Nat'l Computer Sys., Inc., 332 F.3d 1150, 1160 (8th Cir. 2003) (upholding jury verdict for plaintiff "discriminated against . . . because she is a woman who had been pregnant, had taken a maternity leave, and might become pregnant again"; **potential pregnancy** is medical condition that is sex-related because only women can become pregnant)."

Read *Nicole LaPoint v. Family Orthodontics, P. A*., STATE OF MINNESOTA, IN COURT OF APPEALS, A15-0396, Hennepin County District Court File No. 27-CV-13-18122, Filed December 14, 2015, "A prospective employee directly proved that an employer unlawfully discriminated against her on the basis of sex, where, inter alia, the employer repeatedly

articulated two reasons for rescinding the prospective employee's job offer: (1) her failure to disclose her pregnancy at the job interview and (2) **the length of her desired maternity leave**."

Read *Carine Armindo, Plaintiff-appellant, v. Padlocker, Inc., Defendant-appellee*, 209 F.3d 1319 (11th Cir. 2000), "A plaintiff alleging pregnancy discrimination **need not identify specific non-pregnant individuals** treated differently from her, **if the employer violated its own policy in terminating her**. See *Byrd v. Lakeshore Hosp.*, 30 F.3d 1380, 1383 (11th Cir. 1994) (inference of pregnancy discrimination arose where employer fired pregnant employee for excessive absences despite employee having missed no more than her sick time allotted under company policy)."

**Legal Standard**.

Read 18 U.S.C. § 246 - Deprivation of relief benefits,

"Whoever directly or indirectly deprives, attempts to deprive, or threatens to deprive any person of any employment, position, work, compensation, or other benefit provided for or made possible in whole or in part by any Act of Congress appropriating funds for work relief or relief purposes, on account of political affiliation, race, color, **sex**, religion, or national origin, shall be fined under this title, or imprisoned not more than one year, or both."

Read 18 U.S.C. § 241 - Conspiracy against rights,

"If two or more persons conspire to injure, oppress, threaten, or intimidate any person in any State, Territory, Commonwealth, Possession, or District in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same; or

If two or more persons go in disguise on the highway, or on the premises of another, with intent to prevent or hinder his free exercise or enjoyment of any right or privilege so secured—

They shall be fined under this title or imprisoned not more than ten years, or both; and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse or an attempt to commit aggravated

First Motion to Transfer my Lawsuit to New Mexico for a Jury Trial; No. 3:18-cv-03748-JCS

1 | sexual abuse, or an attempt to kill, they shall be fined under this title or imprisoned for any term
2 | of years or for life, or both, or may be sentenced to death."
3 |
4 | Read Article III, Section 2 of the U.S. Constitution,
5 | "The Trial of all Crimes, except in Cases of Impeachment; **shall** be **by Jury**; and such
6 | Trial **shall** be held **in the State where the said Crimes shall have been committed**…"
7 |
8 | Read *Young v. United Parcel Service*, Inc., 575 U.S. ___ (2015),
9 | "*Held*:
10 | 1. An individual pregnant worker who seeks to show <u>disparate treatment through indirect
11 | evidence</u> may do so through application of the *McDonnell Douglas* framework. Pp. 10 23
12 | [*McDonnell Douglas Corp. v. Green*, 411 U. S. 792.]
13 | (b) An individual pregnant worker who seeks to show <u>disparate treatment</u> may make out
14 | a prima facie case under the *McDonnell Douglas* framework by showing that <u>she belongs to the
15 | protected class, that she sought accommodation, that the employer did not accommodate her, and
16 | that the employer did accommodate others "similar in their ability or inability to work."</u> The
17 | employer may then seek to justify its refusal to accommodate the plaintiff by relying on
18 | "legitimate, nondiscriminatory" reasons for denying accommodation. That reason normally
19 | **cannot consist simply of a claim that it is more expensive or less convenient to add pregnant
20 | women to the category of those whom the employer accommodates**. <u>If the employer offers a
21 | "legitimate, nondiscriminatory" reason, the plaintiff may show that it is in fact pretextual.</u> **The
22 | plaintiff may reach a jury** <u>on this issue by providing sufficient evidence that the employer's
23 | policies impose a significant burden on pregnant workers, and that the employer's "legitimate,
24 | nondiscriminatory" reasons are not sufficiently strong to justify the burden, but rather when
25 | considered along with the burden imposed give rise to an inference of intentional discrimination.
26 | The plaintiff can create a genuine issue of material fact as to whether a significant burden exists
27 | by providing evidence that the employer accommodates a large percentage of nonpregnant
28 | workers while failing to accommodate a large percentage of pregnant workers.</u> This approach is

First Motion to Transfer my Lawsuit to New Mexico for a Jury Trial; No. 3:18-cv-03748-JCS

consistent with the longstanding rule that a plaintiff can use circumstantial proof to rebut an employer's apparently legitimate, nondiscriminatory reasons, see *Burdine*, supra, at 255, n. 10 [*Texas Dept. of Community Affairs v. Burdine*, 450 U. S. 248 (1981)], and with Congress' intent to overrule *Gilbert*. Pp. 20 23 [*General Elec. Co. v. Gilbert*, 429 U. S. 125 (1976)]."

Read the F.R.C.P. Rule 38, Right to a Jury Trial; Demand

"(a) Right Preserved. The right of trial by jury as declared by the Seventh Amendment to the Constitution—or as provided by a federal statute—is preserved to the parties inviolate.

(b) Demand. On any issue triable of right by a jury, a party may demand a jury trial by:

(1) serving the other parties with a written demand—which may be included in a pleading—no later than 14 days after the last pleading directed to the issue is served; and

(2) filing the demand in accordance with Rule 5(d).

(c) Specifying Issues. In its demand, a party may specify the issues that it wishes to have tried by a jury; otherwise, it is considered to have demanded a jury trial on all the issues so triable. If the party has demanded a jury trial on only some issues, any other party may—within 14 days after being served with the demand or within a shorter time ordered by the court—serve a demand for a jury trial on any other or all factual issues triable by jury…."

Read the F.R.C.P. Rule 39. Trial by Jury or by the Court

"(a) When a Demand Is Made. When a jury trial has been demanded under Rule 38, the action must be designated on the docket as a jury action. The trial on all issues so demanded must be by jury unless:

(1) the parties or their attorneys file a stipulation to a nonjury trial or so stipulate on the record; or

(2) the court, on motion or on its own, finds that on some or all of those issues there is no federal right to a jury trial.

First Motion to Transfer my Lawsuit to New Mexico for a Jury Trial; No. 3:18-cv-03748-JCS

(b) When No Demand Is Made. Issues on which a jury trial is not properly demanded are to be tried by the court. But the court may, on motion, order a jury trial on any issue for which a jury might have been demanded.

(c) Advisory Jury; Jury Trial by Consent. In an action not triable of right by a jury, the court, on motion or on its own:

(1) may try any issue with an advisory jury; or

(2) may, with the parties' consent, try any issue by a jury whose verdict has the same effect as if a jury trial had been a matter of right, unless the action is against the United States and a federal statute provides for a nonjury trial."

Read 42 U.S. Code § 1981a - Damages in cases of intentional discrimination in employment,

"**(c) Jury trial**

If a complaining party seeks compensatory or punitive damages under this section—

**(1)** any party may demand a trial by jury; and

**(2)** the court shall not inform the jury of the limitations described in subsection (b)(3)."

**Conclusion**.

For the reasons stated above, I am respectfully asking the U.S. District Court for the Northern District of California to transfer my lawsuit No. 3:18-cv-03748-JCS to the District Court of New Mexico for a Jury Trial.

I declare under the penalty of perjury and under the Federal laws that all foregoing is true and correct. Executed at San Francisco, CA on July 15, 2021.

Respectfully submitted,

s/ Tatyana Drevaleva

Plaintiff Pro Se

July 15, 2021.